

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CORRINE DUARTE, VISITING NURSE ASSOCIATION OF EL PASO A/K/A VNA HOME HEALTHCARE OF EL PASO, AND JOE WARDY, | § § § | No. 08-14-00074-CV |
| | | Appeal from the |
| Appellants, | § | 384th Judicial District Court |
| v. | § | of El Paso County, Texas |
| MAYAMAX REHABILITATION SERVICES, L.L.P. AND CANDACE BAIRD, | § § § | (TC# 2013DCV2498) |
| Appellees. | | |

## **O P I N I O N**

This is an interlocutory appeal from the denial of a motion to compel arbitration. TEX.CIV.PRAC.&REM.CODE ANN. § 51.016 (West 2015)(permitting an interlocutory appeal from the denial of a motion to compel arbitration under the Federal Arbitration Act). Appellants, (Duarte, VNA, and Joe Wardy) in one issue contend the trial court erred in denying their motion to compel arbitration against Appellees (Mayamax and Baird). We affirm.

**Background**

On October 1, 2004, sisters, Candace Baird and Corrine Duarte, entered into a written partnership agreement establishing Mayamax Rehabilitation Services, L.L.P. ("Mayamax"). The written partnership agreement provided that any dispute between the sisters/partners would

initially proceed to mediation, and, if unsuccessful, then to arbitration. Mayamax provided therapy services.

Appellees, in their original petition, allege that after the formation of their partnership, Visiting Nursing Association of El Paso ("VNA") and Mayamax entered into and executed an agreement for the provision of therapy services. According to Appellees, a subsequent customer service agreement was executed with VNA in January 2013. In that customer service agreement signed by Joe Wardy, VNA covenanted to "not solicit or attempt to hire, on a regular, full-time, temporary or contractual basis, any healthcare professional until after one year (1) from the date of when the healthcare professional last worked for Mayamax."

Appellees further alleged that Duarte, as vice-president of Mayamax, executed employment agreements with several Mayamax employees. These employment agreements restricted employees of Mayamax from:

(1) engaging in any activity harmful to Mayamax;

(2) discussing future employment in a professional capacity with Mayamax's clients;

(3) prohibited them from engaging in discussions with a competitor regarding the taking over of Mayamax's client contracts.

According to Appellees, "[t]oward the end of 2012[,] Corrine Duarte expressed an interest in terminating the partnership because she represented she was going to seek other employment in an unrelated industry." Appellees assert Duarte prepared the release of partnership agreement and mutual release of all claims and compromise settlement agreement.

On December 17, 2012, Baird and Duarte executed a "Release of Partnership Agreement and Mutual Release of All Claims and Compromise Settlement Agreement ("Settlement

2

Agreement")," which expressly terminated the October 1, 2004 partnership agreement. The

Settlement Agreement provides:

> That [Duarte and Baird] . . . do hereby mutually compromise, settle and fully release, acquit and forever discharge EACH OTHER, and their past and future . . . agents, servants, representatives, employees, employers, successors, assigns, parents, partners, affiliates and subsidiary corporations, and any and all persons or entities in privity with them, whether named herein or not, of and from any and all claims, demands, controversies, actions, or causes of action of whatever kind or character, whether known or unknown, whether extant or inchoate, which they have held or may now or in the future hold for alleged damages or losses or relief of any kind arising from the formation, administration, operation, negotiation or dissolution of the partnership agreement between Candace Portillo [Baird] and Corrine Baird [Duarte] that formed [Mayamax] on or about October 1, 2004, and any business owned or operated by Mayamax or based upon any acts, conduct, representations, omissions, contracts, claims, events, causes, matters related to same. This Release includes, encompasses and extinguishes without limitation all matters arising out of business operations of Mayamax and any grievances or claims for . . . breach of contract, breach of fiduciary duty, . . negligence, fraud, fraudulent inducement, negligent misrepresentation,, conversion, injunctive relief, violations of the Texas Deceptive Trade Practices-Consumer Protection Act, or any other federal, state, or local law, regulation or ordinance, or based on public policy, contract, or tort law. This Release also includes, encompasses and extinguishes any and all claims for statutory damages, statutory penalties, exemplary or punitive damages, treble damages, attorney's fees, costs of court and interest, declaratory judgment, civil conspiracy, theft, misrepresentation and infliction of emotional distress.
>
> As part of the consideration conveyed herein, the parties agree that the [Mayamax partnership agreement], which is dated October 1, 2004, is hereby terminated. The parties agree all rights, duties and obligations created or arising from the [partnership agreement] are hereby released, extinguished and declared void, including any noncompetition, clauses, non-solicitation clauses, and non-disclosure clauses in the [partnership agreement], *and the [partnership agreement] shall have no applicability to any parties to this agreement after the date it is executed.*
>
> The parties represent that the claim herein released have not been assigned or encumbered in any way. The parties to this Agreement understand and agree that his Agreement shall be interpreted and construed according to the laws of the State of Texas that are in effect on this date. This Agreement contains the entire agreement among the parties hereto and the terms of this Agreement are contractual and not a mere recital. This Agreement shall be and is binding upon the heirs, successors and assigns of the parties hereto. [Emphasis added].

According to Appellees after the execution of the settlement agreement in December,

Duarte continued her employment with Mayamax until March 8, 2013. Shortly after receiving her last paycheck from Mayamax, Appellees allege Duarte admitted to Baird that she was employed by VNA. Subsequently, four employees along with one independent contractor terminated their employment contracts with Mayamax and began working for VNA.

Appellees, approximately three months later, filed suit against Appellants. Mayamax and Baird allege Appellants tortiously interfered with Mayamax's contracts with the employees and independent contractor by offering higher compensation and hiring them to work for VNA. Further, Appellees contends Appellants: (1) induced the employees to breach the fiduciary duty they owed to Mayamax; (2) VNA breached the customer service agreement contact with Mayamax; and (3) Duarte breached her fiduciary duty owed to Mayamax as an employee after the termination of the sisters' partnership. Appellees ground their petition in the allegations that Appellants hired Mayamax's employees in order to "strip Mayamax of VNA's therapy business" and "to take away the revenues those employees earned for Mayamax."

Appellants, in November 2013, filed a motion to compel arbitration and stay proceedings pending arbitration asserting the partnership agreement required Baird and Duarte to submit all claims arising from the lawsuit to binding arbitration, including those claims asserted against Duarte's agents and employees. The motion also asserted that Appellees' claims are based on the assumption that a valid partnership agreement between Baird and Duarte was still in place during the time the alleged acts that give rise to the suit. As such, Appellants argued that the partnership agreement's arbitration provision "controls all parties under the doctrine of equitable estoppel."

In response, Appellees asserted that no arbitration agreement exists because the December 17, 2012, Settlement Agreement terminated the partnership agreement which

contained the arbitration provision and had released, extinguished, and declared void all rights, duties, and obligations under the partnership agreement, including any non-competition clauses, non-solicitation clauses, and non-disclosure clauses. Appellees also argued that even if Appellants could show the existence of a valid arbitration agreement, they were still unable to show that Appellees' causes of action fell within the scope of that agreement.

During the hearing on the motion to compel arbitration, Appellants informed the trial court that they were not disputing the Settlement Agreement but, rather, expressed concern that Appellees had referenced events and issues "prior to the date of the release" of the partnership. Appellants contended that if Appellees were raising claims arising from the time when the partnership agreement was valid, the trial court must order arbitration because the arbitration agreement remains valid "going backwards."

Appellees informed the trial court that all of the conduct from which their causes of action arose occurred after December 17, 2012, when Duarte was an employee, and expressly stated that no claims were made against Duarte in her role as a partner. Appellees stated during the hearing that "[e]verything that she did--[Duarte] did--was after the fact when she started taking the employees and taking them over to VNA and competing against her sister with her sister's own employees . . . [and that] all occurred in the March, April, June time frame of 2013, well after the [Settlement Agreement]." The trial court requested an opportunity to study the issue further and later denied Appellants' motion to compel arbitration.

### Standard of Review

The parties do not dispute that the Federal Arbitration Act ("FAA") applies to this proceeding. In a matter subject to the FAA, Section 51.016 of the Texas Civil Practice and Remedies Code allows for an interlocutory appeal of an order denying arbitration.

5

TEX.CIV.PRAC.&REM.CODE ANN. § 51.016. We review a trial court's order denying arbitration under an abuse of discretion standard. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272-73 (Tex. 1992)(orig. proceeding). A trial court abuses its discretion when it refuses to compel arbitration pursuant to a valid and enforceable arbitration agreement. *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002)(orig. proceeding). Further, "we apply a no-evidence standard to the trial court's factual determinations and a de novo standard to legal determinations." *Sidley Austin Brown & Wood, L.L.P. v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 863 (Tex.App.--Dallas 2010, no pet.)(describing this standard as the "same as the abuse of discretion standard of review . . ."); *see also Delfingen US-Tex., L.P. v. Valenzuela*, 407 S.W.3d 791, 798 (Tex.App.--El Paso 2013, no pet.)(party seeking to compel arbitration must establish both the existence of an agreement and that an arbitrable dispute exists within that agreement's scope).

A party seeking to compel arbitration must (1) establish the existence of a valid arbitration agreement; and (2) show that the claims asserted are within the scope of the agreement. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005); *Delfingen US-Texas, L.P.*, 407 S.W.3d at 797. We review the first inquiry--whether a valid arbitration agreement exists--*de novo. See In re Labatt Food Serv.*, *L.P.*, 279 S.W.3d 640, 643 (Tex. 2009)(orig.proceeding); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). "The burden of establishing an arbitration agreement's existence is evidentiary and runs with the party seeking to compel arbitration." *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 812 (Tex.App.--El Paso 2014, no pet.). A court cannot order arbitration in the absence of an agreement to arbitrate. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994).

The second inquiry--whether a particular claim is subject to the arbitration clause--is decided in light of the federal policy and presumption favoring arbitration under the FAA.

6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Ellis v. Schlimmer*, 337 S.W.3d 860, 861-62 (Tex. 2011). "[D]espite strong presumptions that favor arbitration, a valid agreement to arbitrate is a settled, threshold requirement to compel arbitration." *In the Estate of Guerrero*, 465 S.W.3d 693 (Tex.App.-- Houston [14th Dist.] 2015, pet. filed). "[W]hen we are called upon to decide whether the parties have agreed to arbitrate, we do not resolve doubts or indulge a presumption in favor of arbitration, because no party may be forced to submit to arbitration in the absence of sufficient showing that the parties entered into a valid and binding arbitration agreement." *Wright v. Hernandez*, 469 S.W.3d 744, 751 (Tex.App.--El Paso 2015, no pet.).

Normally hearings on motions to compel arbitration are decided in summary proceedings "on the basis of affidavits, pleadings, discovery, and stipulations." *Jack B. Anglin Co., Inc.*, 842 S.W.2d at 269. A motion to compel arbitration is akin to a motion for partial summary judgment and "subject to the same evidentiary standards." *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 208 (Tex.App.--El Paso 2004, orig. proceeding). "In a nonjury proceeding, when no findings of fact or conclusions of law are filed or requested, we infer that the trial court made all the necessary findings to support its judgment." *Paragon Indus. Applications, Inc. v. Stan Excavating, L.L.C.*, 432 S.W.3d 542, 548 (Tex.App.--Texarkana 2014, no pet.). "When the inferred findings of fact are supported by the evidence, the appellate court must uphold the judgment on any theory of law applicable to the case." *Id*. at 549.

Given the trial court did not enter specific findings of fact or conclusions of law to explain its denial of the motion to compel arbitration, we must uphold the trial court decision on any appropriate legal theory urged below. *Shamrock Foods Co. v. Munn & Assocs., Ltd.*, 392 S.W.3d 839, 844 (Tex.App.--Texarkana 2013, no pet.); *Inland Sea, Inc. v. Castro*, 420 S.W.3d

7

55, 57-59 (Tex.App.--El Paso 2012, pet. denied)(affirming denial of motion to compel arbitration on alternative ground where order did not specify the basis for the ruling); *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 854 (Tex.App.--Houston [14th Dist.] 2007)(orig. proceeding).

"While a strong presumption favoring arbitration exists, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *IHS Acquisition No. 131, Inc. v. Iturralde*, 387 S.W.3d 785, 790 (Tex.App.--El Paso 2012, no pet.), *citing J.M. Davidson, Inc.*, 128 S.W.3d at 227. We do not resolve doubts or indulge a presumption in favor of arbitration in deciding whether a party has met its initial burden. *J.M. Davidson, Inc.*, 128 S.W.3d at 227. Rather, the party attempting to compel arbitration must show that the arbitration agreement meets all requisite contract requirements. *Id.* at 228. If the trial court determines that a valid agreement exists, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcement of the arbitration agreement. *Id.* at 227-28.

## ISSUES

In a single issue, Appellants complain the trial court abused its discretion in denying their motion to compel arbitration. Appellants assert that: (1) Texas law requires the arbitrator, not the trial court to decide the validity of the arbitration agreement when the contract as a whole is challenged; (2) the agreement to arbitrate survived the termination of the partnership agreement; and (3) Appellees' claims fall within the scope of the arbitration agreement. We disagree.

### *Arbitrator vs. Trial Court*

First, Appellants posit that it is the role of an arbitrator, not the trial court, to determine whether an arbitration agreement is valid when the contract as a whole is challenged. Appellants base their argument on the fact that Appellees at trial contended that the arbitration provision was no longer controlling because the Partnership Agreement in which it was contained was

8

terminated on December 17, 2012, extinguishing and releasing all rights, duties and obligations under it. Therefore, Appellants assert, because Appellees challenged the validity of the Partnership Agreement in its entirety, rather than the specific arbitration provision itself, the parties were improperly before the trial court. Appellants rely on the following cases for the proposition that absent an attack on the arbitration provision itself, a challenge to the Partnership Agreement as a whole is a question for the arbitrator, not the court. *In re Koch Industries, Inc.*, 49 S.W.3d 439, 445 (Tex.App.--San Antonio 2001,orig. proceeding); *Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 932 (Tex.App.--Houston [1st Dist.] 1996, no pet.); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967); *In re FirstMeritBank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001). Initially, however, we must answer the question whether Appellants have preserved this issue for our review. As a general rule, a party is required to present a complaint to the trial court before being allowed to raise the issue on appeal. *See* TEX.R.APP.P. 33.1; *Gumble v. Grand Homes 2000, L.P.*, 334 S.W.3d 1, 3-4 (Tex.App.--Dallas 2007, no pet.); *Pierce v. Tex. Racing Comm'n*, 212 S.W.3d 745, 760 (Tex.App.--Austin 2006, pet. denied)(appellant waived complaint because he did not, orally or in writing, bring to administrative law judge's attention his complaint that burden of proof had been improperly placed on him); *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003); *Cojocar v. Cojocar*, No. 03-14-00422-CV, 2016 WL 3390893, at *5 (Tex.App.--Austin Jun. 16, 2016, no pet.)(mem. op.); *All American Excavation, Inc. v. Austin Materials, LLC*, Nos. 04-15-00779-CV, 04-15-00780-CV, 04-15-00781-CV, 04-15-00782-CV, 2016 WL 1464409, at *4 (Tex.App.--San Antonio Apr. 13, 2016, no pet.)(mem. op.)(because appellant failed to present argument to the trial court, argument was waived and could not be considered for the first time on appeal).

The final order denying the motion to compel was signed on February 11, 2014. In a letter brief filed on February 12th, Appellants, for the very first time, raise the issue that the arbitrator, not the trial court, determines whether an arbitration agreement is valid when the entire contract is challenged. Closely examining the record, we find that the motion to compel arbitration does not assert this issue nor was it raised in the hearing in December 2013. Thus, Appellants' point of whether an arbitrator or a trial court determines the validity of an arbitration agreement contained in a challenged contract was first raised only after the trial court entered its final order denying the motion to compel. Accordingly, because Appellants failed to timely raise this argument to the trial court, and there is no evidence in the record for our review nor any indicia the trial court considered the issue, Appellants have thus waived error on their first argument. TEX.R.APP.P. 33.1; *Cojocar*, 2016 WL 3390893, at *5; *All American Excavation, Inc.*, 2016 WL 1464409, at *4.

### *Did the arbitration agreement survive the termination of the Partnership contract?*

Under the FAA, absent unmistakable evidence that the parties intended the contrary, it is the courts rather than arbitrators that must decide "gateway matters" such as whether a valid arbitration agreement exists. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005)(orig. proceeding). In *In re Morgan Stanley & Co., Inc.*, the Texas Supreme Court concluded that "where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute." 293 S.W.3d 182, 189 (Tex. 2009), *citing Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 219 (5th Cir. 2003); *see also Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004)(where the very existence of a contract containing an arbitration provision is at issue, federal courts have the authority and

10

responsibility to decide the matter, and where no valid arbitration agreement exists, arbitrator is without authority to decide anything).

As in this case, the court of appeals in *TransCore Holdings, Inc., v. Rayner*, 104 S.W.3d 317, 319 (Tex.App.--Dallas 2003, pet. denied), similarly addressed the effect that a subsequent termination agreement had on the parties' original contract. The parties, TransCore and Rayner, initially executed a stock purchase agreement ("SPA") which contained an arbitration clause. *Id.* The parties later executed a "termination agreement." *Id.* TransCore sought to compel arbitration under the SPA and Rayner opposed arguing that he was no longer required to arbitrate because the termination agreement released him of his obligation to arbitrate. *Id.* The termination agreement at issue in *TransCore Holdings, Inc.* provided in relevant part:

> Except as to the promises made in this letter and except as otherwise provided for in this letter, Viastar and TransCore, on the one hand, and you [Rayner] on the other hand, hereby fully, forever, irrevocably and unconditionally release, remise, settle and discharge one another from any and all manner of claims, charges, complaints, debts, liabilities, demands, actions, causes of action, suits, rights, covenants, contracts, controversies, agreements, promises, omissions, damages, obligations and expenses of any kind, including attorneys' fees, whether known or unknown, which they had, now have, or hereafter may have against each other arising prior to the date of this letter whether or not pursuant to the terms and conditions set forth in any prior agreements between yourself, Viastar, affiliated companies and its parent, provided however that nothing contained in this letter shall release or discharge you from any obligations with respect to claims [the] Viastar and/or TransCore has, now have, or hereafter may have against you under or pursuant to Sections 7, 8, and 9 of the Employment Agreement date May 12, 2000.

*Id.* at 320-21.

The court reasoned that before it could compel arbitration, it was first required to determine whether a subsequent agreement between the parties released them from their previous agreement to arbitrate. *Id.* at 322-323; *see also Texas La Fiesta Auto Sale, LLC v. Belk*, 349 S.W.3d 872, 881 (Tex.App.--Houston [14th Dist.] 2011, no pet.)(also holding that the determination of whether a later agreement between the parties revokes an arbitration clause

11

properly belongs to the trial court because the court must determine the threshold issue of whether a valid arbitration agreement exists).  The *TransCore Holdings, Inc.,* court ultimately held that the termination agreement at issue contained such broad, sweeping language that "unconditionally released the parties from all previous obligations." *Id.* at 323.

Similarly, the court of appeals in *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 586 (Tex.App.--Houston [14th Dist.] 1999, no pet.), addressed the issue of whether a subsequent settlement agreement between the parties revoked an arbitration clause.  The *Valero Energy Corp.* court also held that it was proper for the court to decide whether a later agreement between the parties revoked an arbitration clause because "[w]ithout an agreement to arbitrate, arbitration cannot be compelled." *Id.*, *quoting Freis*, 877 S.W.2d 283, 284 (Tex. 1994).  After considering the subsequent settlement agreement between the parties, the court ultimately held that the settlement agreement only modified certain provisions in the parties' original contract and that the arbitration clause was not one of those provisions. *Valero Energy Corp.*, 2 S.W.3d at 589.

*Valero Energy Corp.* and *TransCore Holdings, Inc.* are dispositive of Appellants' arguments.  Before compelling arbitration, the trial court must first determine whether the parties' subsequent Settlement Agreement extinguished their previous agreement to arbitrate contained in the original partnership agreement. *TransCore Holdings, Inc.*, 104 S.W.3d at 322-23.  The Settlement Agreement at issue here, executed on December 17, 2012, expressly provided that the parties agreed that the October 1, 2004, partnership agreement was terminated; that all rights, duties, and obligations created or arising from the partnership agreement were released, extinguished, and declared void; and that the partnership agreement *"shall have no applicability to any parties to this agreement after the date it is executed."* [Emphasis added].

12

Moreover, the parties' Settlement Agreement, in much stronger terms than the termination agreement at issue in *TransCore Holdings, Inc.*, unconditionally released the parties from all previous obligations without any restriction of the release or discharge of obligations to any provision contained in the prior partnership agreement. 104 S.W.3d at 320-21. Appellant, Baird, drafted and presented the Settlement Agreement to Duarte and now must abide by the language she so meticulously crafted. The terms of the Settlement Agreement unequivocally terminated the agreement to arbitrate on December 17, 2012.

### *Do Appellees' claims fall within the scope of the arbitration agreement?*

Last, Appellants argue the arbitration agreement is enforceable and can be applied retroactively to events and causes of action prior to the execution of the Settlement Agreement on December 17, 2012. Appellants point to Appellees' original petition to support their argument that the factual allegations supporting Appellees' causes of actions occurred prior to December 17, 2012 and, so, therefore are subject to the arbitration agreement. The underlying assumption of this point is that the arbitration agreement is enforceable to events and or causes of actions arising prior to the execution of the Settlement Agreement. We have decided the arbitration agreement did not survive after the date of execution of the Settlement Agreement. Appellants correctly point out that Appellees argued that the facts underpinning their causes of actions did not occurred until after the Settlement Agreement was executed. Both parties argued to the trial court that the application of the arbitration agreement retroactively is permitted.

For the purpose of our analysis, we assume without deciding that the arbitration agreement is enforceable retroactively until the execution of the Settlement Agreement. Given the global language of the Settlement Agreement, the question of whether the arbitration agreement can be enforced retroactively is tenuous at best. However, if the parties are correct in

13

that assumption, we examine whether the Appellees' factual allegations support Appellants' assertion that Appellees' claims arose prior to the December 17th and, therefore, are subject to the arbitration agreement.

In determining whether a claim falls within the scope of an arbitration agreement, we review the trial court's ruling *de novo* because it involves the trial court's legal interpretation of the agreement. *See Ikon Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 694 (Tex.App.--Houston [14th Dist.] 1999, no pet.)(orig. proceeding). We focus on the factual allegations of the complaint rather than the legal causes of action asserted. *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995)(orig. proceeding). The burden lies with the party opposing arbitration to show that the claims fall outside the scope of the arbitration agreement. *Id.*

The petition alleges that Duarte ceased to be a partner on December 17, 2012, but continued to work as a regular employee for Mayamax until February 1, 2013, and was paid as an employee until March 8, 2013. Appellees contend that they reasonably believed that toward the end of 2012, Duarte had already contacted or had been contacted by Joe Wardy or VNA. Appellees further asserted in part that "during [Duarte's] last three months of employment at Mayamax, Corrine Duarte, Joe Wardy, and VNA, behind Candace Baird's back, and without disclosure to Candance Baird and Mayamax conspired to arrive at a plan to take Mayamax's employees and independent contractors and to strip Mayamax of VNA's therapy business."

During the hearing on the motion to compel arbitration, the trial court addressed Appellants' counsel, "[i]f [Appellees are] suing [Appellants] on things that occurred prior to [the termination of the partnership agreement,] then I may see a legitimacy to your argument, but if [they are] saying that somehow [they are] suing for actions that occurred afterwards and somehow they're tied to what occurred before--[,]" Appellants' counsel interrupted and stated, "I

14

think that has to be arbitrated . . . ." This exchange reflects the trial court's acknowledgment that claims arising from conduct occurring during the existence of the partnership agreement may be subject to the arbitration agreement despite the subsequent termination of the partnership agreement. However, Appellees' counsel explicitly and repeatedly represented to the trial court and opposing counsel that all of Appellees' claims and causes of action asserted in this instance arose after the parties terminated their partnership agreement and signed the Settlement Agreement and that no claims were being asserted in relation to Duarte's conduct as a partner.

Accordingly, the trial court could have reasonably concluded that Appellees were not asserting any claims or causes of action arising from the period before the parties mutually terminated the partnership agreement. Such a conclusion supports both a finding that Appellees' claims do not fall within the scope of the arbitration agreement as well as the trial court's denial of Appellants' motion to compel arbitration.

### Conclusion

We hold that the trial court did not abuse its discretion in denying Appellants' motion to compel arbitration. The partnership agreement contained a broad arbitration clause requiring the parties to submit any dispute to arbitration. Subsequently, sisters Baird and Duarte "returned to the bargaining table and began negotiations to terminate their business relationship." *TransCore Holdings, Inc.*, 104 S.W.3d at 323. Their negotiations led to a new agreement, the Settlement Agreement. That agreement, in very broad and unequivocal language, unconditionally released the parties from all previous obligations. For these reasons, we affirm the trial court's judgment.

November 4, 2016

YVONNE T. RODRIGUEZ, Justice

Before Rodriguez, J., Barajas, C.J. (Senior Judge), and Larsen, J. (Senior Judge)
Barajas, C.J. (Senior Judge) and Larsen, J. (Senior Judge)(Sitting by assignment)

15