**Affirmed and Opinion Filed October 21, 2024**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-23-00786-CV

### INTEGRITY MARKETING GROUP, LLC
### AND BRYAN W. ADAMS, Appellants
### V.
### MATTHEW SMITH, NICHOLAS AYALA,
### AND RYAN MONTALTO, Appellees

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-23-03018**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Carlyle
Opinion by Justice Partida-Kipness

Appellants Integrity Marketing Group, LLC (Integrity) and Bryan W. Adams (Adams) appeal the July 20, 2023 order (the Order) denying in part and granting in part Integrity's Motion to Compel Arbitration and Motion to Stay Pending Arbitration. The Order granted Integrity's motion "regarding the Equity Purchase Agreement" but denied all other relief not expressly granted. Integrity and Adams concede this Court has jurisdiction over only the portions of the Order denying Integrity's motion. We affirm that denial.

## BACKGROUND

Integrity is a wealth management company that distributes life and health insurance and provides clients with wealth management and retirement planning solutions. Prior to 2020, appellees[1] Matthew Smith, Nicholas Ayala, and Ryan Montalto (Appellees) each owned and operated his own insurance agency. Integrity acquired Appellees' insurance agencies in 2020, and Appellees became Integrity executive employees with the acquisition. The closing documents for each acquisition included an Equity Purchase Agreement (EPA) between Integrity and each Appellee and his agency, and an Employment Agreement between Integrity and each Appellee.[2]

Integrity contends each Agency reported negative annual net income beginning in 2023. According to Integrity, it met with each Appellee in February 2023, and developed a "Partner Action Plan," which included immediate next steps to improve each Agency's financial results. Integrity maintains each Appellee immediately stopped working and conspired to resign simultaneously to avoid a "for cause" termination and maximize the amount of stock payouts provided for in the agreements. Integrity sued Appellees for these alleged violations of their Employment Agreements.

---

[1] Michael Killimett was also a defendant in the underlying proceeding. Killimett is not a party to this appeal because he and Integrity settled their disputes.

[2] Each Appellee also entered a Limited Liability Agreement of IMG Marketing Group, LLC (the LLC Agreements). Those are not relevant to this appeal.

In its original petition, Integrity asserted each Appellee breached his respective Employment Agreement, tortiously interfered with his respective Employment Agreement, engaged in a civil conspiracy to breach the Employment Agreements, fraudulently induced Integrity to enter into the EPAs and the Employment Agreements, and was unjustly enriched by his employment with Integrity. The petition also included a claim for declaratory judgment in which Integrity sought a declaration that it permissibly terminated each Appellee for cause.

Three months after filing suit, Integrity filed a motion to stay the underlying proceedings pending arbitration. In the motion, Integrity acknowledged that its original filing was based on Appellees' alleged wrongdoing in relation to the Employment Agreements, and "did not cite or otherwise invoke any legal rights or obligations imposed on the parties via" the EPAs. Integrity asserted, however, that it had discovered new evidence providing grounds for Integrity to rescind the EPAs. Integrity contended the EPAs bound the parties to arbitrate the issue of rescission and all other claims and defenses arising out of the EPAs, including the claims included in Integrity's Original Petition.

Appellees filed counterclaims against Integrity the same day Integrity moved for a stay of proceedings. The counterclaims were for breach of the Employment Agreements and the LLC Agreements, and common law fraud for inducing them to enter into the Employment Agreements and the LLC Agreements. Appellees also sought a declaratory judgment that they each resigned from Integrity and were not

terminated for cause. In addition, Appellees asserted a third party claim of common law fraud against Bryan Adams, Integrity's Chief Executive Officer.

The choice of law and dispute resolution provisions of the EPAs and the Employment Agreements are central to this appeal. Each EPA included the following arbitration provision:

> Section 7.8 Arbitration. Subject to Section 7.9,[3] in the event of **any claim, dispute or other matter arising out of or relating to this Agreement**, the Parties will promptly attempt to settle such dispute through consultation and negotiation in good faith and in a spirit of mutual cooperation. If agreement is reached concerning the resolution of such dispute, then such agreement shall be final, conclusive and binding on the Parties. If, on or before the tenth (10th) day after written notice of such dispute is given by one Party to the other Parties, such dispute has not been resolved to the satisfaction of all the Parties, **such dispute shall be settled by an arbitration proceeding by a mutually-agreed-upon arbitrator.** The Parties shall provide the arbitrator with such information as may be reasonably requested in connection with the arbitration of such dispute, and shall otherwise cooperate with each other and such arbitrator in good faith and with the goal of resolving such dispute as promptly as reasonably practicable. The arbitrator shall issue a decision and award with respect to the dispute as promptly as reasonably practicable. The arbitrator's decision and award with respect to the dispute referred to shall be final and binding on the Parties and may be entered in any court with jurisdiction, and the parties hereto shall abide by such decision and award. The cost of the arbitration proceeding and any proceeding in court to confirm or to vacate any arbitration award, as applicable (including, without limitation, attorneys' fees and costs), shall be borne by the unsuccessful Party (if any) and shall be awarded as part of the arbitrators' award; provided, however, that if the arbitrators do not find one Party to be unsuccessful

---

[3] Section 7.9 provides for the U.S. District Court for the District of Delaware or, "if such courts lack federal subject matter jurisdiction," the courts of the State of Delaware located in Wilmington County, to have sole and exclusive jurisdiction over "a lawsuit or other proceeding relating to or arising from" the EPAs. Those jurisdictional provisions are not at issue here. The arbitration provision in the EPA related to Matthew Smith's agency was found in Section 9.8, and referenced Section 9.9, which was that EPA's jurisdiction provision, rather than Section 7.9.

then *each Party shall be responsible for its own costs of the arbitral proceeding and any proceeding in court to confirm or to vacate any arbitration award (including, without limitation, attorney's fees and costs). In the event any Party commences a lawsuit or other Proceeding relating to or arising from this Agreement, the cost of such lawsuit or other Proceeding (including, without limitation, attorney's fees and costs), shall be borne by the unsuccessful Party, provided, however, that if the court or other governing body does not find one Party to be unsuccessful then each Party shall be responsible for its own costs of the lawsuit or other Proceeding (including, without limitation, attorney's fees and costs).*[4]

(bold and italics emphasis added). None of the Employment Agreements included an arbitration provision. Rather, each Employment Agreement included the following provision waiving a jury trial but declining arbitration:

> 20. <u>MUTUAL WAIVER OF JURY TRIAL</u>. BECAUSE DISPUTES ARISING IN CONNECTION WITH COMPLEX TRANSACTIONS ARE MOST QUICKLY AND ECONOMICALLY RESOLVED BY AN EXPERIENCED AND EXPERT PERSON AND **THE PARTIES WISH APPLICABLE STATE AND FEDERAL LAWS TO APPLY (RATHER THAN ARBITRATION RULES), THE PARTIES DESIRE THAT THEIR DISPUTES BE RESOLVED BY A JUDGE APPLYING SUCH APPLICABLE LAWS.** THEREFORE, TO ACHIEVE THE BEST COMBINATION OF THE BENEFITS OF THE JUDICIAL SYSTEM AND OF ARBITRATION, EACH PARTY TO THIS AGREEMENT HEREBY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING BROUGHT TO RESOLVE ANY DISPUTE BETWEEN OR AMONG ANY OF THE PARTIES HERETO, WHETHER ARISING IN CONTRACT, TORT, OR OTHERWISE, ARISING OUT OF, CONNECTED WITH, RELATED OR INCIDENTAL TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREBY AND/OR THE RELATIONSHIP ESTABLISHED AMONG THE PARTIES HEREUNDER.

---

[4] Section 9.8 of the EPA regarding Matthew Smith's agency provides "the cost of the arbitral proceeding shall be paid equally by the Parties" if the "arbitrators do not find one Party to be unsuccessful." Section 9.8 does not, however, include the language italicized here and included in the other EPAs.

(bold emphasis added). The EPAs and the Employment Agreements all included provisions choosing Delaware law to govern the agreements. For example, each EPA included the following provision:

> Section 7.7 <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the domestic Laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Delaware.[5]

Similarly, each Employment Agreement included the following choice of law provision:

> 17. <u>Choice of Law</u>. The laws of the State of Delaware will govern all other questions concerning the construction, validity and interpretation of this Agreement and the exhibits hereto, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

Integrity subsequently moved to compel arbitration and stay the trial court proceedings (the arbitration motions) for all claims based on the arbitration provisions in the EPAs. Appellees contested the arbitration motions. After a hearing on Integrity's motions, the trial court signed an order granting the arbitration motions in part and denying them in part as follows:

---

[5] The Governing Law provision in the EPA regarding Matthew Smith's agency, Section 9.7, included additional language under which "any claim, controversy or dispute of any kind or nature (whether based upon contract, tort or otherwise) involving any Financing Source that is in any way related to this Agreement or any of the transactions related hereto, . . . shall be governed by, and construed in accordance with, the Laws of the State of New York." That part of the Governing Law provision is not at issue here.

–6–

**ORDER ON PLAINTIFF'S MOTION TO COMPEL ARBITRATION AND
MOTION TO STAY PENDING ARBITRATION**

On July 12, 2023, came on to be considered Plaintiff's Motion to Compel Arbitration and Motion to Stay Pending Arbitration.

After considering the motion, response(s), and evidence on file, and the arguments of counsel, the Court is of the opinion that Plaintiff's Motion to Compel Arbitration and Motion to Stay Pending Arbitration shall be granted; otherwise, denied.

**IT IS THEREFORE ORDERED** that the motion to stay judicial proceedings and to compel arbitration regarding the Equity Purchase Agreement is hereby granted.

All relief not expressly granted herein is hereby denied.

SIGNED on **7/20/2023 11:04:12 AM**

Dale B. Tillery, Presiding
Judge, 134th Judicial District Court

Integrity timely-filed its Notice of Accelerated Interlocutory Appeal on August 9, 2023.

## APPELLATE JURISDICTION

When Integrity filed this interlocutory appeal, we questioned our jurisdiction and ordered the parties to provide the Court with jurisdictional briefing. In their initial response to our jurisdictional inquiry, Integrity and Adams informed the Court the parties disagreed on the scope of the Order, and the trial court was scheduled to hear the parties' arguments on September 21, 2023. Whereas Integrity and Adams maintained the Order granted their request for relief in full and compelled the whole case to arbitration, Appellees contended the Order only granted a stay and compelled to arbitration claims asserted under the EPAs. Appellees' jurisdictional briefing confirmed the parties' dispute and asserted this Court has jurisdiction over that portion of the trial court's order denying Integrity's arbitration motions.

At the September 21, 2023 hearing, the trial judge clarified his ruling on the record, stating he did not think he compelled the entire case to arbitration and "I

thought I was pretty clear. I ordered one phase of the case and not the other." Integrity's counsel responded, "Then I think that resolves it, Your Honor. We've taken an appeal from the part that you denied, which stays this case until that appeal's resolved." In their supplemental jurisdictional briefing in this Court, Integrity and Adams agreed with Appellees' contention that we have jurisdiction "*only* 'over that portion of the trial court's order denying Appellants' motion.'"

After reviewing the jurisdictional briefing, the Court concluded that "it appears the Court has jurisdiction over this appeal" and allowed the case to proceed. That decision, however, was made without the benefit of the parties' briefing and oral arguments, and without a review of the appellate record. We must, therefore, revisit our jurisdiction now. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (per curiam) (appellate court must independently determine whether it has jurisdiction over an appeal, even if no party contests jurisdiction); *see also Hous. Auth. of City of Alice v. Tex. Mun. League Joint Self-Ins. Fund*, No. 04-15-00813-CV, 2017 WL 1161195, at *2 (Tex. App.—San Antonio Mar. 29, 2017, no pet.) (mem. op.) (revisiting question of appellate jurisdiction following submission).

Generally, appeals may not be taken from interlocutory orders unless authorized by statute. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195, 200 (Tex. 2001); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992). Integrity and Adams contend the EPAs and the Employment Agreements are governed by the Federal Arbitration Act (FAA). Their notices of appeal, therefore, state they appeal

the trial court's order pursuant to section 51.016 of the Texas Civil Practice and Remedies Code and 9 U.S.C. 16(a)(1)(C), which provide:

> In a matter subject to the Federal Arbitration Act (9 U.S.C. Section 1 et seq.), a person may take an appeal or writ of error to the court of appeals from the judgment or interlocutory order of a district court, county court at law, or county court under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16.

TEX. CIV. PRAC. & REM. CODE § 51.016. Under 9 U.S.C. § 16(a)(1)(C), an appeal may be taken from an order "denying an application under section 206 of this title to compel arbitration[.]" Section 206 provides, "A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement." 9 U.S.C. § 206.

The substance and function of the order viewed in the context of the record controls our interlocutory jurisdiction. *Del Valle Indep. Sch. Dist. v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992) (noting "it is the character and function of an order that determine its classification" for determining jurisdiction over interlocutory order); *McReynolds v. Elston*, 222 S.W.3d 731, 738 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding order allowing parties to continue pending arbitration under partnership agreement without expressly denying appellant's request to arbitrate under separate settlement agreement denied appellant's "potential contractual right to arbitration" under settlement agreement and was appealable

–9–

order). An order which functions to deny a party's motion to compel arbitration when viewed in the context of the record will qualify for interlocutory appeal. *Taylor Morrison of Tex., Inc. v. Skufca*, 650 S.W.3d 660, 673 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (citing *Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 800 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding order granting Baker Hughes' motion to compel arbitration under one agreement, but denying Schlumberger's motion for arbitration under different agreement, was appealable interlocutory order)).

The EPAs' arbitration provisions state they are subject to the FAA. The trial court compelled claims "regarding" the EPAs to arbitration, but denied all other relief requested by Integrity. The Order, thus, denied Integrity's motion to compel arbitration as to any claims that were not regarding the EPAs. In the context of this record, we conclude the substance and function of the Order supports its characterization as one denying in part a motion to compel arbitration subject to the FAA. Because Integrity also seeks to enforce the EPAs' arbitration provisions over their claims related to and arising from the Employment Agreements, we conclude we have appellate jurisdiction over that portion of the Order denying Integrity's motion to compel arbitration. *See Morford v. Esposito Sec., LLC*, No. 05-14-01223-CV, 2015 WL 5472640, at *1 (Tex. App.—Dallas Sept. 18, 2015, no pet.) (mem. op.) (finding jurisdiction over portion of order denying motion to compel arbitration but not over that portion granting the motion to compel arbitration); *see also*

*Halliburton Co. v. KBR, Inc.*, 446 S.W.3d 551, 558–59 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Based on the trial court's characterization of Halliburton's application as one to compel arbitration, its express denial of the application, and the resulting denial of Halliburton's asserted contractual right to arbitrate under the TSA, we conclude that the trial court's order is an appealable order under FAA section 16."); *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 861–62 (Tex. App.—Dallas 2010, no pet.) (appellate court had jurisdiction over interlocutory appeal of order denying motion to compel arbitration under the FAA).

## STANDARD OF REVIEW

We review a trial court's order denying a motion to compel arbitration for an abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). However, the trial court's factual determinations receive deference if they are supported by the evidence, and legal determinations are reviewed de novo. *Id.* In this case, the trial court did not issue findings of fact and conclusions of law. We must, therefore, imply all relevant facts to support the challenged order and affirm the order on any available legal theory supported in the evidence. *State of Tex. v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 413 (Tex. 2023).

## ANALYSIS

Integrity and Adams bring one issue on appeal; whether the trial court erred by compelling the parties to arbitration on some but not all claims asserted. The

parties dispute which claims were compelled to arbitration by the trial court. We must, therefore, first determine which claims the trial court did and did not compel to arbitration. Then, we will review whether the trial court abused its discretion by denying the motion to compel arbitration as to certain claims.

## I.    Claims "regarding" the EPAs

We must first determine which claims were compelled to arbitration by the trial court. As discussed above, the Order granted the motions only as to claims "regarding" the EPAs. The parties disagree as to which claims regard the EPAs. "The same rules of interpretation apply in construing the meaning of a court order of judgment as in ascertaining the meaning of other written instruments. The entire contents of the instrument and record should be considered. The judgment is to be read as a whole." *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971) (citations omitted); *Garcia v. Kubosh*, 377 S.W.3d 89, 98 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The trial judge made no statements on the record explaining what he meant by "regarding" the EPAs. The term "regarding," however, has a plain and common meaning. It is a preposition meaning "about; concerning; in respect of." *See Regarding*, THE OXFORD DESK DICTIONARY AND THESAURUS (2d Ed. 2007).[6]

Integrity's live pleading at the time it filed the motion to compel arbitration

---

[6] "Regarding" is a preposition that means "with respect to : CONCERNING." *See Regarding*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/regarding (last visited Oct. 21, 2024).

was its original petition. The only pleaded claim specifically invoking the EPAs is Integrity's fraudulent inducement claim, in which Integrity asserted Appellees fraudulently induced Integrity to enter into the EPAs and the Employment Agreements. We conclude Integrity's claims against Appellees for fraudulently inducing Integrity to enter the EPAs are claims "regarding" the EPAs because Integrity specifically invoked the EPAs as the basis for those claims. Further, under Delaware law, fraudulent inducement claims arise out of the contract to which the inducement claim relates. *SPay, Inc. v. Stack Media Inc.*, No. 2020-0540-JRS, 2021 WL 1109181, *3 (Del. Ch. Dec. 21, 2021) ("A claim that a party to a contract was fraudulently induced to enter that contract undoubtedly "originate[s]" or "stem[s] from the contractual relationship."); *see also Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001) ("Fraudulent inducement, however, is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties."); *Montes v. Keenan*, No. 05-22-00921-CV, 2023 WL 4199265, at *4 (Tex. App.—Dallas June 26, 2023, no pet.) (mem. op.) ("Fraudulent inducement arises in the context of a contract; the elements of fraud must be established as they relate to a contract between the parties.") (citing *Haase*).

The same is not true with respect to Integrity's remaining claims for breach of contract, tortious interference, civil conspiracy, unjust enrichment, and

–13–

declaratory judgment claims, as well as its claim that Appellees fraudulently induced Integrity to enter the Employment Agreements. Integrity's Original Petition does not reference the EPAs in relation to the remaining claims. On the contrary, Integrity's Original Petition references only the Employment Agreements in those remaining claims and seeks damages caused by Appellees' purported breaches of the Employment Agreements, their alleged intent to breach the Employment Agreements, and the unjust enrichment Appellees received through their employment with Integrity. Similarly, Appellees' counterclaims and third-party claim mention and concern only the Employment Agreements and the LLC Agreements. We, therefore, conclude the trial court compelled only one claim to arbitration; Integrity's fraudulent inducement claim against Appellees concerning inducement to enter the EPAs.

## II.      Remaining claims not subject to arbitration

Next, we must determine if the trial court abused its discretion by refusing to compel Integrity's remaining claims and Appellees' counterclaims and third-party claim to arbitration. Under Texas law, a party seeking to compel arbitration under the FAA must establish both the existence of a valid arbitration agreement between the parties and that the particular controversy is within the scope of that agreement. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001). When determining whether a claim falls within the scope of arbitration agreement, Texas courts apply a presumption in favor of arbitration and resolve any doubts about scope in favor of

arbitration. *Id.* at 753. That is not the case in Delaware. Under Delaware law, the policy favoring arbitration "does not trump basic principles of contract interpretation." *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del. 2002). "An arbitration clause, no matter how broadly construed, can extend only so far as the series of obligations set forth in the underlying agreement. Thus, arbitration clauses should be applied only to claims that bear on the duties and obligations under the Agreement." *Id.* at 156. To determine whether a claim may be compelled to arbitration, "the court must determine whether the arbitration clause is broad or narrow in scope" and then "must apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration." *Id.* at 155; *SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1998) ("In determining arbitrability, the courts are confined to ascertaining whether the dispute is one that, on its face, falls within the arbitration clause of the contract.").

Here, the EPAs include arbitration provisions but the Employment Agreements do not. Moreover, paragraph 20 of the Employment Agreements specifically recites the parties' desire not to arbitrate claims "arising out of, connected with, related or incidental to" any of the following: the Employment Agreements, the transactions contemplated by the Employment Agreements, or the relationships among the parties established under the Employment Agreements. Instead, the parties state they want state and federal laws "rather than arbitration

–15–

rules" to apply to disputes under the Employment Agreements and "desire that their disputes be resolved by a judge applying such applicable laws." Under the plain language of the Employment Agreements, Integrity and Adams cannot establish the existence of a valid arbitration agreement between the parties to the Employment Agreements. This does not end our inquiry, however, because Integrity and Adams maintain that all claims asserted below are within the scope of the arbitration provisions found in the EPAs.

In determining whether a claim falls within the scope of an arbitration agreement, we review the trial court's ruling de novo because it involves the trial court's legal interpretation of the agreement. *See Ikon Off. Sols., Inc. v. Eifert*, 2 S.W.3d 688, 694 (Tex. App.—Houston [14th Dist.] 1999, no pet.). We focus on the factual allegations of the complaint rather than the legal causes of action asserted. *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995) (orig. proceeding). The burden lies with the party opposing arbitration to show the claims fall outside the scope of the arbitration agreement. *Id.*; *Duarte v. Mayamax Rehab. Servs., L.L.P.*, 527 S.W.3d 249, 260 (Tex. App.—El Paso 2016, pet. denied). The trial court did not enter findings of fact or conclusions of law. We must, therefore, imply all relevant facts to support the challenged order and affirm the order on any available legal theory supported in the evidence. *See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413.

Here, Integrity and Adams contend all claims, counterclaims, and third-party claims pleaded below were "regarding" the EPAs and subject to the arbitration provisions in the EPAs because the EPAs and the Employment Agreements are related agreements, which the parties signed contemporaneously. Further, Integrity and Adams argue the parties' claims are inextricably intertwined with the EPAs and the Employment Agreements because Integrity seeks rescission of the entire transaction based on the Appellees' purported misconduct. These arguments fail for two reasons.

First, Integrity's Original Petition does not include the remedy of recission or any assertions they are entitled to undo the entire transactions based on Appellees' alleged misconduct in relation to the EPAs or the Employment Agreements. There were, therefore, no pleadings to support Integrity's motion to compel arbitration on those bases.

Second, Delaware law, which applies[7] to the construction of the EPAs and the construction, validity, and interpretation of the Employment Agreements, does not

---

[7] The EPAs' governing law provisions state the EPAs "shall be governed by and construed in accordance with" Delaware law. The Employment Agreements' choice of law provisions state Delaware law "will govern all other questions concerning the construction, validity and interpretation of this Agreement and the exhibits hereto[.]" Integrity and Adams contend federal law, not Delaware law, applies to the question of whether the dispute is subject to arbitration because the EPAs include arbitration provisions and evidence a transaction "involving commerce." We disagree. Integrity and Adams's reading of the two clauses violates a "cardinal principle of contract construction: that a document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995). As the Supreme Court did in *Mastrobuono*, this Court interprets the EPAs so the "arbitration clause covers arbitration" while the "choice-of-law provision covers the rights and duties of the parties." *See Mastrobuono*, 514 U.S. at 63–64 ("We think the best way to harmonize the choice-of-law provision with the arbitration provision is to read 'the laws of the State of

support Integrity's arguments. When parties to an agreement decide they will submit their claims to arbitration, Delaware courts strive to honor the reasonable expectations of the parties and ordinarily resolve any doubt as to arbitrability in favor of arbitration. *SBC Interactive*, 714 A.2d at 761. Nevertheless, arbitration is a mechanism of dispute resolution created by contract. *See id.* ( "A court will not compel a party to arbitrate, however, absent a clear expression of such an intent"). An arbitration clause, no matter how broadly construed, can extend only so far as the series of obligations set forth in the underlying agreement. *Parfi Holding AB*, 817 A.2d at 155–56; *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995) ("A dispute within the scope of the contract is still a condition precedent to the involuntary arbitration of antitrust claims.") (citation omitted). Delaware law requires arbitration clauses be applied only to claims that bear on the duties and obligations under the agreement. *See Elf Atochem N. Am. v. Jaffari Inc.*, 727 A.2d 286, 295 (Del. 1999) (upholding trial court's determination that contract claims must be submitted to arbitration because they "bear directly" on the duties and obligations under the agreement). "The policy that favors alternate dispute resolution mechanisms, such as arbitration, does not trump basic principles of contract interpretation." *Parfi Holding AB*, 817 A.2d at 155–56.

---

New York' to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators.").

–18–

These tenets are particularly relevant where, as here, the parties entered into two separate agreements and the contract containing the arbitration clause is in obvious tension with the contract that formed the basis of the claims. In such cases, the Delaware courts look to the substance of the parties' claims to determine if the agreement containing an arbitration provision touches on those claims. *Hough Assocs., Inc. v. Hill*, No. Civ.A 2385-N, 2007 WL 148751, * 2 (Del. Ch. Jan. 17, 2007); *TowerHill Wealth Mgmt., LLC v. Bander Family P'ship, L.P.*, C.A. No. 3830-VCS, 2008 WL 4615865, * 3 (Del. Ch. Oct. 9, 2008).

For example, in *Hough Associates*, Michael Hill sought to compel arbitration of claims asserted against him under a non-competition agreement based on an arbitration provision contained in a separate stock purchase agreement. 2007 WL 148751 at * 2. Finding that the non-competition and stock purchase agreements "function independently and contain their own terms designed to satisfy their own unique objectives," the court denied Hill's motion to compel arbitration. *Id.* at * 6. The court reasoned that all of the substantive claims in the case arose from the non-competition agreement, which did not even mention arbitration, and thus there was "no basis to find that the parties agreed to arbitrate any claims stemming from their" non-competition agreement. *Id.* at * 2.

Similarly, in *TowerHill*, one of the parties initiated arbitration under one contract (an investment advisory agreement) even though its claims arose under a series of different contracts (operating agreements for various investment LLCs).

–19–

2008 WL 4615865, * 3 The investment advisory agreement provided for binding arbitration whereas the Operating Agreements called for "binding dispute resolution to take place in this court, not in arbitration." *Id.* Because the party's complaint arose primarily from and sought relief for breach of the Operating Agreements, which called for judicial adjudication and not arbitration, the court refused to apply the arbitration provision to the dispute before it. *Id.* In doing so, the court noted the party seeking arbitration suffered no harm from the decision and refusing to compel arbitration would not lead to absurd results:

> Bander knew when it signed the Operating Agreements that some disputes arising out of its relationship with TowerHill would come to this court, if non-binding arbitration or mediation failed, rather than going to binding arbitration. Bander cannot now complain that its arbitration rights are being trampled simply because the clear contracts it signed are being enforced.

*Id.* The same logic applies in this case.

Here, Integrity's remaining claims focus on rights purportedly owed and performances allegedly due under the Employment Agreements, not the EPAs. Similarly, Appellees' counterclaims seek relief from alleged misconduct by Integrity in relation to Appellees' employment and purported breaches of the Employment Agreements. Those counterclaims further implicate only the performance of the Employment Agreements. The same is true for the third-party claims against Adams. Those fraud claims are based on Appellees' allegations that Adams made false misrepresentations to induce Appellees to enter into the Employment Agreements and LLC Agreements and to continue working to increase profits for Integrity. Those

–20–

allegations do not touch upon the EPAs. Neither Integrity's remaining claims nor Appellees' counterclaims and third-party claims touch upon the terms of or performance required by the EPAs. Nor do they depend on the existence of the EPAs. Those claims, counterclaims, and third-party claims, therefore, do not fall within the scope of the EPAs' arbitration provisions. *See Parfi Holding AB*, 817 A.2d at 151 ("[W]e hold that contracting parties who provide for the arbitration of disputes in their agreements need submit to arbitration only those claims that touch on the legal rights created by their contract."); *see also Hough Assocs.*, 2007 WL 148751, * 2 ("no absurdity arises from concluding that the parties decided to approach dispute resolution differently under the two Agreements" and holding "there is no basis to find that the parties agreed to arbitrate any claims stemming from their Non-Competition Agreement" where that agreement did not mention arbitration and the substantive claims arose from that agreement).

Under this record, we conclude the trial court did not abuse its discretion by denying the arbitration motions as to the remaining claims, counterclaims, and third-party claims asserted below. We overrule Integrity and Adams' sole appellate issue.

## CONCLUSION

The trial court correctly concluded the claims related to the Employment Agreements were not subject to arbitration.

Accordingly, we affirm the portion of the trial court's July 20, 2023 Order denying Integrity's arbitration motions as to all claims other than Integrity's fraudulent inducement claim invoking the EPAs.

230786f.p05

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

INTEGRITY MARKETING
GROUP, LLC AND BRYAN W.
ADAMS, Appellants

No. 05-23-00786-CV     V.

MATTHEW SMITH, NICHOLAS
AYALA, AND RYAN
MONTALTO, Appellees

On Appeal from the 134th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-23-03018.
Opinion delivered by Justice Partida-
Kipness. Justices Pedersen, III and
Carlyle participating.

In accordance with this Court's opinion of this date, the portion of the trial
court's July 20, 2023 order denying in part Integrity Marketing Group, LLC's
Motion to Compel Arbitration and Motion to Stay Proceedings Pending Arbitration
is **AFFIRMED.**

It is **ORDERED** that appellees MATTHEW SMITH, NICHOLAS AYALA,
AND RYAN MONTALTO recover their costs of this appeal from appellants
INTEGRITY MARKETING GROUP, LLC AND BRYAN W. ADAMS.

Judgment entered this 21st day of October, 2024.

–23–