

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00001-CV

_____

PARAGON INDUSTRIAL APPLICATIONS, INC.,
AND RLI INSURANCE COMPANY, Appellants

V.

STAN EXCAVATING, LLC, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 13-C-1016-102

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

O P I N I O N

In Bowie County, Texas, Stan Excavating, LLC, sued Paragon Industrial Applications, Inc., and its bonding company, RLI Insurance Company,[1] alleging that Paragon failed to pay Stan Excavating for the work it had performed as Paragon's subcontractor on a road construction project in Nash, Texas. Paragon filed a motion to compel arbitration,[2] arguing that Stan Excavating's claims fell within the arbitration clause in a subcontract agreement between Paragon and Stan Excavating which mandates that this kind of dispute be heard in an arbitration to be conducted in San Luis Obispo, California. After a hearing, the trial court denied the relief sought by Paragon.

On appeal, Paragon contends that the trial court erred in denying its motions because a valid arbitration agreement existed between the parties.[3] At first viewing, this appears to be a case that would be controlled by laws pertaining to arbitration. It is not. Rather, it is governed by the laws regarding agency.

We affirm the trial court's judgment because there is some evidence supporting the trial court's implied finding that David Hagood (who purported to sign the written agreement on

[1]Paragon and RLI filed either joint pleadings or virtually identical pleadings, and both have joined the appeal filed with this Court. Because both are completely aligned on positions as to the controlling issues in this suit, for the sake of brevity, references to both of the appellants will simply be made as Paragon.

[2]Ancillary to their motion to compel arbitration, Paragon filed a plea to the jurisdiction and a plea in abatement, presumably to preserve its claimed right to compel arbitration. In this interlocutory appeal, Paragon requests us to reverse the trial court's refusal to abate the action and its plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.014, 51.016 (West Supp. 2013), § 171.097 (West 2011). Because the issue of the applicability of the arbitration agreement is dispositive of both Paragon's plea to the jurisdiction and its plea in abatement, we address them collectively, making reference only to the motion to compel arbitration.

[3]Paragon also contends that the trial court erred in denying RLI's motions because Stan Excavating's claims against RLI are derivative of its claims against Paragon. Because our ruling is dispositive on the issue of arbitration, we need not address this point of error.

2

behalf of Stan Excavating) lacked the sufficient authority to bind Stan Excavating to the agreement that contained the arbitration clause.

## I.      Factual and Procedural Background

On November 11, 2011, Paragon intended itself to enter into a contractor/subcontractor agreement with Stan Excavating, wherein Paragon would be the general contractor and Stan Excavating would be the prime subcontractor responsible for hiring the other subcontractors and overseeing the work on the Brinlee Road construction project in Nash, Texas. Hagood executed the contract on Stan Excavating's behalf, and Paragon's president, Joyce LeFrancois, executed it on Paragon's behalf. Hagood was identified in that contract as a co-owner of Stan Excavating. The agreement required Stan Excavating to perform all of the work on and provide all the materials for the Brinlee Road Project. Under the agreement, Stan Excavating would be paid $1,004,865.35 for providing "all labor, equipment, materials, tools, supervision[,] and coordination to complete the work identified in the Scope of Work . . . ." The specific scope of work stated, in pertinent part, that Stan Excavating, as subcontractor, would furnish "all labor, materials, equipment, transportation, taxes[,] and facilities per plans and specifications which shall include, but not be limited to . . . [the] Stan Excavating Bid Proposal dated October 11, 2011[,] and [i]n accordance with the plans and specs for Contract #08-79-04411 – Brinlee Road improvements, The City of Nash, TX."

When the project was completed, a dispute arose when Paragon refused to pay $43,224.68 of Stan Excavating's last invoice. When Stan Excavating demanded payment, Paragon informed Stan Excavating that it had paid the disputed funds directly to some of Stan

3

Excavating's subcontractors who had complained that Stan Excavating failed to pay them for the work they had performed on the project. Stan Excavating filed claims against Paragon for breach of contract, suit on sworn account, quantum meruit, and unjust enrichment. In response, Paragon filed a plea to the jurisdiction, a plea in abatement, and a motion to compel arbitration, arguing that Stan Excavating's claims fell within the arbitration clause in the contract agreement between Paragon and Stan Excavating; accordingly, Paragon claimed the parties' dispute must be heard in San Luis Obispo, California, as provided for in the agreement. In Stan Excavating's amended motion to stay arbitration, it argued that (a) the subcontract agreement was not signed by a person authorized or empowered to enter into contracts on Stan Excavating's behalf and (b) Stan Excavating's claims did not fall within the scope of the arbitration clause because they were an action involving a third party. After a hearing, the trial court denied Paragon's pleas and motions, and this appeal followed.

## II.    Standard of Review

We review the trial court's denial of a motion to compel arbitration for an abuse of discretion. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 851–52 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) (explaining standards of review for arbitration appeals). Under this standard, we defer to the trial court's factual determinations that are supported by the record and review legal questions de novo. *Labatt Food Serv., L.P.*, 279 S.W.3d at 643.

4

"In evaluating a motion to compel arbitration, a court must determine first whether a valid arbitration agreement exists, and then whether the agreement encompasses the claims raised." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding); *see In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). The party moving to compel arbitration bears the burden to show the existence of a valid agreement to arbitrate. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Once a party establishes the existence of an arbitration agreement and that the claim falls within the scope of the arbitration agreement, the trial court must compel arbitration and stay its own proceedings unless the party opposing arbitration proves a defense precluding enforcement. *In re C & H News Co.*, 133 S.W.3d 642, 645 (Tex. App.—Corpus Christi 2003, orig. proceeding).

### A. Did Paragon satisfy its burden to show a valid agreement to arbitrate?

In its first point of error, Paragon contends that the trial court erred in denying its motions because it met its burden of establishing that there was a valid agreement to arbitrate.

In determining the validity of agreements to arbitrate, we generally apply ordinary principles of state contract law. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding). The elements of a valid contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). "Under generally accepted principles of contract interpretation, all writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer

5

to one another." *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999); *IP Petroleum Co. v. Wevanco Energy, L.L.C.*, 116 S.W.3d 888, 899 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("Instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times.") (citing *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000)); *see also DeClaire v. G & B McIntosh Family Ltd. P'Ship*, 260 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding contract can be effective if signed by only one party if other party accepts by his acts, conduct, or acquiescence in terms of contract).

In their sworn pleadings, Stan Excavating, Paragon, and RLI attached a copy of the agreement, which purports to be an agreement between Paragon (the general contractor) and Stan Excavating (the subcontractor) regarding a road project in Nash, Texas, to which reference is previously made. LeFrancois signed the contract on behalf of Paragon, purporting to be its president. The party signing on behalf of Stan Excavating was Hagood, this being the only place on the contract where his name appears; immediately below the line for his signature is the handwritten identification of Hagood as a "Co Owner" of Stan Excavating. The agreement contains a broadly worded arbitration provision that states, in relevant part,

> The parties agree that any and all claims, disputes or other matters arising under or relating to this Agreement shall be subject to and decided by binding arbitration in San Luis Obispo, CA . . . .

At trial and on appeal, Paragon argues that the entire agreement (and, thus, the arbitration clause contained within it) was binding on Stan Excavating and that Stan Excavating's claims fell within the scope of the arbitration clause. In opposing the motions filed by Paragon and RLI,

6

Stan Excavating contended, in pertinent part, that it was not bound by the terms of the agreement because Hagood was not "authorized or empowered to enter into contracts on behalf of [Stan Excavating], which was well-known to [Paragon] . . . ." On appeal, Paragon contends that Hagood's actions effectively bound Stan Excavating to the contract and that the "conduct of [Stan Excavating] and its principles throughout the course of the Project ratified the actions of Hagood."

## III.    Agency

An "agent" is one who is authorized by a person or entity to transact business or manage some affair for the person or entity. *Neeley v. Intercity Mgmt. Corp.*, 732 S.W.2d 644, 646 (Tex. App.—Corpus Christi 1987, no writ). An agent's authority to act on behalf of a principal depends on some communication by the principal, either to the agent, as the basis for actual or express authority, or to a third party, as the basis for apparent or implied authority. *In re ADM Investor Servs., Inc.*, 304 S.W.3d 371, 374 (Tex. 2010); *Gaines v. Kelly*, 235 S.W.3d 179 (Tex. 2007). An agent cannot bind a principal unless the agent has either actual or apparent authority to do so. *Verizon Corp. Servs. Corp. v. Kan-Pak Sys., Inc.*, 290 S.W.3d 899, 904 (Tex. App.—Amarillo 2009, no pet.); *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907 (Tex. App.—Dallas 2008, no pet.); *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 22 (Tex. App.—San Antonio 2006, pet. denied).

The general rule is that a party dealing with an agent is bound, at his peril, to ascertain not only the fact of the agency, but the extent of the agent's power; if either is controverted, he bears the burden of establishing the existence of the agency or the extent of the agency. *Verna*

*Drilling Co. v. Parks-Davis Auctioneers, Inc.*, 659 S.W.2d 877, 881 (Tex. App.—El Paso 1983, writ ref'd n.r.e.); *Boucher v. City Paint & Supply, Inc.*, 398 S.W.2d 352, 356 (Tex. Civ. App.—Tyler 1966, no writ). Thus, when the existence of an agency relation or the authority of an alleged agent is at issue, the party relying on the agency or asserting that a particular act was within the scope of the agent's authority has the burden of proving the allegation. *See IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007); *Buchoz v. Klein*, 184 S.W.2d 271, 271 (Tex. 1944); *Thermo Products Co. v. Chilton Indep. Sch. Dist.*, 647 S.W.2d 726, 732 (Tex. App.—Waco 1983, writ ref'd n.r.e.).

In a nonjury proceeding, when no findings of fact or conclusions of law are filed or requested, we infer that the trial court made all the necessary findings to support its judgment. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989) (per curiam); *Waltenburg v. Waltenburg*, 270 S.W.3d 308, 312 (Tex. App.—Dallas 2008, no pet.); *Mays v. Pierce*, 203 S.W.3d 564, 571 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). When the inferred findings of fact are supported by the evidence, the appellate court must uphold the judgment on any theory of law applicable to the case. *Giangrosso v. Crosley*, 840 S.W.2d 765, 769 (Tex. App.—Houston [1st Dist.] 1992, no writ). In addition, we defer to the trial court to resolve conflicts in the evidence and to determine the weight to be given the testimony. *Bates v. Tesar*, 81 S.W.3d 411, 425 (Tex. App.—El Paso 2002, no pet.).

Bound by these rules, if there is evidence in the record from which the trial court could reasonably imply that Hagood was not Stan Excavating's agent or lacked the authority to bind

8

Stan Excavating to the agreement, we must defer to the trial court's implied finding and affirm the judgment. *Labatt Food Servs., L.P.*, 279 S.W.3d at 643.

### A.     Actual Authority

Actual authority generally denotes the existence of authority that a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe that he possesses, or (3) allows the agent to believe, by want of due care, that he possesses the authority to act on behalf of the principal. *Suarez v. Jordan*, 35 S.W.3d 268, 273 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Spring Garden 79U, Inc. v. Stewart Title Co.*, 874 S.W.2d 945, 948 (Tex. App.—Houston [1st Dist.] 1994, no writ). Express authority is delegated to an agent by words that expressly and directly authorize the agent to do an act or series of acts on behalf of the principal. *Crooks v. M1 Real Estate Partners, Ltd.*, 238 S.W.3d 474, 483 (Tex. App.—Dallas 2007, pet. denied).

The owners of Stan Excavating are James Naples and Patti Hamilton, with Naples being a minority owner and Hamilton the majority owner. Even though Hagood signed the agreement as co-owner, Naples testified that Hagood was not an owner but is, rather, "just an employee" and "that's all he's ever been." Naples testified that Hagood did not have the authority to enter into contracts on Stan Excavating's behalf and that by signing the contract as co-owner, Hagood misrepresented his capacity and, for all effects, forged the company's signature. Naples admitted that despite Hagood's actions, he is still employed by Stan Excavating.

According to Naples, any proposed agreement binding Stan Excavating would have been sent to Stan Excavating's corporate attorney, who would have negotiated the terms of the

9

contract on Stan Excavating's behalf before it was signed by anyone. That vetting and negotiating did not happen in this case, as Naples denied that any member of Stan Excavating had seen the contract before this litigation began.

Even though there is evidence to the contrary, we find there is some evidence from which the trial court could have found that Hagood lacked the actual authority to bind Stan Excavating to the agreement. Therefore, we must defer to the trial court's implied finding. *See Labatt Food Servs., L.P.*, 279 S.W.3d at 643.

### B.      Apparent Authority

An agent acting within the scope of apparent authority binds a principal as thoroughly as it would if the principal performed the action. *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984). Apparent authority is based on estoppel arising

> either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise.

*Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 949 (Tex. 1998). A principal's full knowledge of all material facts is essential to establish a claim of apparent authority based on estoppel. *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007) (citing *Rourke v. Garza*, 530 S.W.2d 794, 803 (Tex. 1975), *abrogated on other grounds by Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007)). To determine an agent's apparent authority, we examine the conduct of the principal, reliance by the party alleging apparent authority, and the reasonableness of the third party's assumptions regarding the agent's authority. *Gaines*, 235 S.W.3d at 183–84; *see also Ames*, 672 S.W.2d at 450. Declarations of the alleged agent, without more, are incompetent

10

to establish either the existence of the agency or the scope of the alleged agent's authority. *Gaines*, 235 S.W.3d at 183. Even if an agent is not authorized to act on behalf of the principal, the agent's actions may nonetheless be binding on the principal if the principal later ratifies the agent's conduct. *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 552 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Paragon's vice president, Aaron Stephens, testified that it was Hagood who approached Paragon on behalf of Stan Excavating about the Brinlee Road Project. Stephens said that Hagood told them he was one of the owners of Stan Excavating and that Paragon acted under that impression until this lawsuit was filed. Stephens stated that he knew Naples was one of Stan Excavating's owners, but he admitted that Paragon made no effort to ascertain either the veracity of Hagood's claims to part ownership of the entity or the extent of his authority to act for it. When the lawsuit was filed, Stephens checked the website for the Texas Secretary of State and discovered that Hagood was not listed as one of Stan Excavating's owners, whereas Naples and Hamilton were listed as owners.

Texarkana Construction was a subcontractor on the project. James Brower, the company's owner, testified that he worked on the project at Hagood's request. While he knew Hagood did not own Stan Excavating, he knew from his prior dealings with Hagood that if Hagood asked him to work on a project, "it would be fine."

Naples denied that anyone at Stan Excavating had ever seen the contract with Paragon before this litigation began. He further testified that although he was fully aware that Stan Excavating was working on the Brinlee Road Project, he believed that Stan Excavating had been

11

retained only as a subcontractor to perform a limited scope of work, mostly comprising excavation, drainage, and dirt work.

There were two addenda signed by Hamilton as "Owner," one entitled "Subcontractor Certified Payroll" dated November 15, 2011, and another entitled "ARRA & FFATA Reporting Requirements," signed November 29, 2011. Hagood's initials appear on every page of the agreement, including the pages of the two addenda. However, Naples testified that from his previous dealings with Paragon, Hamilton had signed similar, one-page documents and that sending the pages individually, and on different dates, was not abnormal. She signed the two addenda weeks apart, before the agreement was signed and finalized. While they are both labeled as addenda, neither document references the specific project or the agreement or contract to which they are addenda.

Hagood submitted invoices to Paragon regarding the project, and Paragon produced a couple of waivers relating to this project and one other, both signed by Hagood on Stan Excavating's behalf. Naples testified that Hagood submitted invoices because, as the representative of Stan Excavating who was physically at the project site, he was in the best position to warrant that the work being submitted for payment was actually completed. Naples admitted that when he and Hamilton are unavailable, Hagood would be given authority to sign waivers on behalf of Stan Excavating. If Naples alone were unavailable, Hagood would also occasionally sign documents on Stan Excavating's behalf because Hamilton, as a notary, could not notarize her own signature.

12

Taking into account that Hagood was apparently either the sole employee or the primary employee of Stan Excavating with whom the representatives of Paragon dealt, it is understandable that they may have held a good-faith belief that Hagood was the agent of Stan Excavating. However, even though one of the parties may be operating under a good-faith belief that the person with whom they are dealing is the agent of another, that fact alone is not enough to bind the purported principal. *See Coker v. Cramer Fin. Grp., Inc.*, 992 S.W.2d 586, 595 (Tex. App.—Texarkana 1999, no pet.).

## IV. Ratification by Stan Excavating

Without a great deal of elaboration, Paragon premises that the actions taken by Stan Excavating subsequent to the signing of the contract by Hagood amounted to a ratification of the contract by Stan Excavating. At first blush, this argument might appear to hold some merit. However, this Court has previously held that "[t]he critical factor in determining whether a principal has ratified an unauthorized act by his agent is the principal's knowledge of the facts of the prior transaction and his actions in light of such knowledge." *Old Republic Ins. Co. v. Fuller*, 919 S.W.2d 726, 728 (Tex. App.—Texarkana 1996, writ denied). Ratification of an agreement by a party takes place only after that party (upon learning all of the material facts) confirms or adopts an earlier act that did not then legally bind it and that it could have repudiated. *Avary v. Bank of Am., N.A.*, 72 S.W.3d 779, 788 (Tex. App.—Dallas 2002, pet. denied). The testimony of Naples was that the principals of Stan Excavating were unaware of the existence of the contract urged by Paragon until after the lawsuit was filed. If the testimony of Naples is to be believed,

13

the actions taken by Stan Excavating antedated its awareness of the existence of the alleged written contract.

In addition, one should take into account that under the contract as alleged by Paragon, Stan Excavating was to be paid $1,004,865.35 for providing "all labor, equipment, materials, tools, supervision[,] and coordination to complete the work identified in the Scope of Work . . . ." The specific scope of work stated, in pertinent part, that Stan Excavating, as subcontractor, would furnish "all labor, materials, equipment, transportation, taxes[,] and facilities per plans and specifications which shall include, but not be limited to . . . [the] Stan Excavating Bid Proposal dated October 11, 2011[,] and [i]n accordance with the plans and specs for Contract #08-79-04411 – Brinlee Road improvements, The City of Nash, TX." Paragon's vice president testified that Stan Excavating was paid $374,297.32. Even removing the amount in controversy that Stan Excavating maintains has remained unpaid, that amount is far less than the amount Paragon would have been required to pay under the contract it alleges governed the dealings between the two entities.

Naples testified that Stan Excavating does excavating, dirt work, and drainage and that is the type of work they did on the Brinlee Road Project. Naples further said that Stan Excavating was paid for "work performed." This testimony would contradict evidence that Stan Excavating did the work contemplated in the contract as alleged.

## V.    Conclusion

From examining the principal's conduct, Paragon's reliance, and whether that reliance was reasonable, we find that there is some evidence in the record to support the trial court's

14

implied findings that Hagood lacked apparent authority to bind Stan Excavating to the agreement and that Stan Excavating did not subsequently ratify the written agreement by its actions. Even if we would weigh the evidence differently, we must defer to the trial court's determination of the facts. Accordingly, we overrule this point of error.

We affirm the trial court's order.


Bailey C. Moseley
Justice

Date Submitted:     March 18, 2014
Date Decided:       May 6, 2014

15