

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-25-00067-CV
_____

## TEXAMERICAS CENTER; TEXAMERICAS CENTER PUBLIC FACILITY CORPORATION; TAC EAST HOLDINGS COMPANY NO. 1; SCOTT NORTON; AND JEFF WHITTEN, Appellants

## V.

## HOOKS INDEPENDENT SCHOOL DISTRICT, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 24C1373-202

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

The Hooks Independent School District (HISD) filed suit against the TexAmericas Center and parties aligned with it[1] (Appellants) for breach of an agreement, among other things. Because TexAmericas Center and its nonprofit corporations are governmental entities, Appellants filed a plea to the jurisdiction arguing that they were immune from suit and HISD's pleadings failed to demonstrate a waiver of governmental immunity. The trial court denied Appellants' plea to the jurisdiction, resulting in this appeal. Because we find that HISD's pleadings, even if taken as true, failed to affirmatively demonstrate the Texas Legislature's waiver of Appellants' governmental immunity, we reverse the trial court's order and render judgment dismissing HISD's claims.

## I.      Factual and Procedural Background

The underlying lawsuit arises from Appellants' effort to secure support for special legislation concerning taxation of property controlled by TexAmericas Center. In 2019, the Texas Legislature passed Section 3503.1541 of the Texas Special District Local Laws Code (Special Legislation), titled "Certain Property Exempt From Taxation," which reads as follows:

> (a)      A leasehold or other possessory interest granted to a person by [TexAmericas Center] or by a nonprofit corporation holding title for [TexAmericas Center] is owned, used, and held for a public purpose for and on behalf of [TexAmericas Center] and is exempt from taxation under Section 11.11, Tax Code.
>
> (b)      Section 25.07(a), Tax Code, does not apply to a leasehold or other possessory interest granted to a person by [TexAmericas Center] or by a nonprofit

---

[1]The Appellants are TexAmericas Center, TexAmericas Center Public Facility Corporation, TAC East Holdings Company No. 1, Scott Norton, and Jeff Whitten.

corporation holding title for [TexAmericas Center] during the period [TexAmericas Center] or nonprofit corporation owns the estate or interest encumbered by the possessory interest.

TEX. SPEC. DIST. CODE ANN. § 3503.1541.

According to HISD, Appellants contacted HISD in February 2019 to gain its support for Special Legislation that would exempt it from ad valorem taxes.[2] HISD pled that Appellants promised HISD "that upon the passage of this Special Legislation, [TexAmericas Center] would implement its Payment-in-Lieu-of-Taxes program ("PILOT Program"), which would allow [TexAmericas Center] to collect funds from its leaseholders that would have been paid as *ad valorem* taxes and return those payments to" HISD.

HISD alleges that TexAmerica Center, through one of its officers, "represented to the Hooks ISD Board of Trustees at a duly called meeting that 'those entities,' meaning the tenants or lessees of [TexAmericas Center's] properties, 'would pay to TexAmericas [Center], and TexAmericas [Center] would then cut a check to the school district in that amount.'" HISD asserted that "[i]n consideration for the promise made by [TexAmericas Center], Hooks ISD performed by passing a written resolution on February 25, 2019, in support of the Special Legislation." HISD's resolution states that it supported TexAmericas Center's efforts "to bring new economic development opportunities and jobs to Bowie County, Texas, and therefore support[ed] legislation that would exempt from ad valorem taxes the leasehold interest."

The Special Legislation was signed by Governor Greg Abbott on May 31, 2019. On February 25, 2020, TexAmericas Center approved its PILOT Program.

---

[2]These facts are gathered from HISD's live pleading.

3

HISD received payments pursuant to the PILOT Program. Even so, it argued that TexAmericas Center failed to make HISD whole.

HISD's original pleading only asserted causes of action for fraud and promissory estoppel. Appellants argued that they were immune from suit and that the Texas Legislature had not waived governmental immunity for HISD's fraud and promissory estoppel causes of action. In response, HISD filed an amended petition adding a breach of contract claim. Appellants renewed their plea to the jurisdiction, arguing that while governmental immunity could be waived for a breach of contract, the Texas Legislature's waiver of immunity required a written contract for goods or services, which HISD did not reference in its pleadings. In response, HISD filed a second amended petition, which is the live pleading at issue.

In its live pleading, HISD recited the facts leading to the dispute. HISD alleged that TexAmericas Center partially performed on its promises by making some payments to HISD but did not pay the entirety of what it collected from lessees under the PILOT Program. HISD's breach of contract action alleged that HISD "agreed to support the Special Legislation eliminating ad valorem tax revenue" in exchange for TexAmericas Center's promise "to collect funds from its leaseholders that would have been paid as *ad valorem* taxes and return those payments to the District" under its PILOT Program. For the element of breach, HISD alleged that "[b]y not remitting to the District the full amount of the payments in lieu of taxes collected from the tenants, [TexAmericas Center] breached the contract with [HISD]."

4

Using the same facts, HISD raised alternative claims of promissory estoppel and fraud and alleged that it relied on TexAmericas Center's "promise to make the District whole."[3] It requested a "permanent injunction prohibiting [TexAmericas Center] from continuing to withhold revenue from the District" and requested monetary relief of over $1,000,000.00.[4]

Lastly, HISD asserted ultra vires claims against Whitten and Norton. HISD stated in its petition that Whitten's and Norton's conduct "were either authorized by the [TexAmericas Center] Entities or Scott Norton and Jeff Whitten acted without authority."

After reviewing Appellants' plea to the jurisdiction and HISD's live pleading, the trial court denied the plea to the jurisdiction.

## II. Standard of Review

"[I]mmunity from suit defeats a trial court's subject matter jurisdiction" over the suit. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex. 2004). "Whether a trial court possesses jurisdiction is a question of law we review de novo." *City of Houston v. Williams* (*Williams II*), 353 S.W.3d 128, 133 (Tex. 2011). "Courts always have jurisdiction to determine their own jurisdiction." *Hous. Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007); *Tex. Right to Life v. Van Stean*, 702 S.W.3d 348, 355 (Tex. 2024) (per curiam)

---

[3]"The elements of promissory estoppel include: (1) a promise; (2) foreseeability of reliance by the promisor; and (3) substantial reliance by the promisee to his detriment." *Maguire Oil Co. v. City of Houston*, 69 S.W.3d 350, 369 (Tex. App.—Texarkana 2002, pet. denied) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). Fraud requires a showing "that the plaintiff acted in reliance on the false representation and thereby suffered injury." *Butler v. Collins*, 714 S.W.3d 562, 565 n.2 (Tex. 2025) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).

[4]"[G]overnmental immunity generally bars suits for retrospective monetary relief." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368–69 (Tex. 2009).

5

("[I]t is never advisory for a court to resolve an issue that disposes of a jurisdictional objection.").

"Governmental units are immune from suit unless immunity is waived by state law." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). "The foundational rule in all cases is that '[a] party suing the governmental unit bears the burden of affirmatively showing waiver of immunity.'" *City of Austin v. Powell*, 704 S.W.3d 437, 447 (Tex. 2024) (alteration in original) (quoting *Maspero*, 640 S.W.3d at 528). "There is 'a presumption against any waiver until the plaintiff establishes otherwise.'" *Id.* (quoting *Rattray v. City of Brownsville*, 662 S.W.3d 860, 866 (Tex. 2023)). "The plaintiff—the nonmovant—survives the plea to the jurisdiction only by showing that the statute 'clearly and affirmatively waive[s] immunity' and by also 'negating any provisions that create exceptions to, and thus withdraw, that waiver.'" *Id.* (alteration in original) (quoting *Rattray*, 662 S.W.3d at 867).

A plea to the jurisdiction may be presented in a way that mirrors a motion under Rule 91a of the Texas Rules of Civil Procedure, a no-evidence motion for summary judgment, or a traditional motion for summary judgment. *Powell*, 704 S.W.3d at 447 (citing Tex. R. Civ. P. 91a.1). The parties agree that the plea to the jurisdiction in this case is a non-evidentiary challenge to the pleadings. When "the government does not dispute the plaintiff's factual allegations," the question becomes "whether the alleged facts 'affirmatively demonstrate a trial court's subject matter jurisdiction.'" *Id.* (quoting *Miranda*, 133 S.W.3d at 226). In a non-evidentiary challenge to the pleadings, the movant "may obviously rely on the plaintiff's own pleadings in arguing that they fail to 'affirmatively demonstrate the court's jurisdiction to hear

the case.'" *Id.* (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012)). When, as here, a plea to the jurisdiction is presented as a challenge to the sufficiency of the pleadings: "We construe the pleadings liberally in favor of the pleader." *Herrera v. Mata*, 702 S.W.3d 538, 541 (Tex. 2024) (per curiam). However, "courts 'cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain.'" *Tex. Tech Univ. Sys. v. Martinez*, 691 S.W.3d 415, 419 (Tex. 2024) (quoting *Flowers v. Flowers*, 407 S.W. 3d 452, 458 (Tex. App.—Houston [14th Dist.] 2013, no pet.)).

The scope of our review includes not only the petition, but also the attachments to the petition. *Id.* at 423; *see Powell*, 704 S.W.3d at 447, (analogizing a non-evidentiary attack on the pleadings to a Rule 91a motion); *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 276 (Tex. 2021) (orig. proceeding) ("[I]n considering a Rule 91a motion, a court may not consider evidence and 'must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits.'" (quoting TEX. R. CIV. P. 91a.6)).

"[A] plaintiff 'should be afforded the opportunity to amend' if the challenged jurisdictional defect may be cured with further factual allegations." *Herrera*, 702 S.W.3d at 541 (Tex. 2024) (quoting *Martinez*, 691 S.W.3d at 419). "But if the pleading affirmatively negates jurisdiction, then the plea to the jurisdiction should be granted without the opportunity to amend." *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 393 (Tex. 2022) (citing *Miranda*, 133 S.W.3d, at 227).

7

**III.     The Texas Legislature Has Not Waived Governmental Immunity for HISD's Claims**

It is undisputed that TexAmericas Center and its non-profit corporations are governmental entities.  Even so, HISD argues that it has met its burden to show that the Texas Legislature has waived governmental immunity for its claims (1) in TexAmericas Center's enabling legislation; (2) in Section 271.152 of the Texas Government Code, which provides a waiver for certain breach of contract actions against governmental entities; and (3) because they raised ultra vires claims against Whitten and Norton.[5]  After reviewing the bases for waiver of governmental immunity asserted by HISD, we conclude that they do not apply.

**A.     TexAmericas Center's Enabling Legislation Does Not Waive Immunity**

First, HISD cites to TexAmericas Center's enabling legislation in support of its position that the Texas Legislature has waived governmental immunity for its claims.  HISD argues, and it asserted in its petition, that the trial court has jurisdiction over its dispute because TexAmericas Center's enabling statute says that it "may exercise any power or duty necessary or appropriate to carry out a project . . . including the power to . . . sue and be sued."  TEX. SPEC. DIST. CODE ANN. § 3503.101(b)(1).

However, the Texas Supreme Court has already found that the language giving a governmental entity the power to "sue and be sued" does not waive sovereign immunity. *Williams II*, 353 S.W.3d at 132  (quoting *City of Houston v. Williams* (*Williams I*), 216 S.W.3d 827, 828 (Tex. 2007) (per curiam) (citing *Tooke v. City of Mexia*, 197 S.W.3d 325, 346–47 (Tex.

---

[5]HISD did not assert any waiver of immunity under the Texas Tort Claims Act because it only waives governmental immunity for property damage, personal injury, or death under certain circumstances which are not present here. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.025.

2006))); *see City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391 (Tex. 2007) (per curiam) ("'[S]ue and be sued' provisions in city charters do not waive immunity from suit for monetary damages . . . ."). Applying the Texas Supreme Court's clear precedent here yields the result that Section 3503.101 of the Texas Special District Local Laws Code does not provide governmental immunity by "clear and unambiguous language." *Williams II*, 353 S.W.3d at 134 (quoting TEX. GOV'T CODE ANN. § 311.034; *Tooke*, 197 S.W.3d at 329).[6] Accordingly, we find that the enabling legislation cannot be the basis of a waiver of sovereign immunity in this case.

**B.     HISD's Pleadings Show There Was No Written Contract**

Second, HISD argues that Appellants waived governmental immunity pursuant to Section 271.152 of the Texas Local Government Code because the claims asserted against them arose out of a contract. *See* TEX. LOC. GOV'T CODE ANN. § 271.152. "A governmental entity waives its immunity *from liability* by entering into a contract, voluntarily binding itself like any other party to the agreement." *Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 367 (Tex. 2019) (citing *Tooke*, 197 S.W.3d at 332). "But only the legislature can waive governmental immunity *from suit*, and when it chooses to waive such immunity it must express that intent using 'clear and unambiguous' language." *Id.* (quoting *Lubbock Cnty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 301 (Tex. 2014)).

**1.     A Written Contract for Goods or Services Is Required for Waiver of Immunity**

Section 271.152 states,

---

[6]Further, Section 3503.101(b)(1) gives TexAmericas Center the power to be sued only if it is necessary "to carry out a project," and HISD does not allege that TexAmericas Center is being sued "to carry out a project." TEX. SPEC. DIST. CODE ANN. § 3503.101(b).

A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a *contract subject to this subchapter* waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE ANN. § 271.152 (emphasis added). The term "[c]ontract subject to this subchapter" means:

> (A)   a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity; or

> (B)   a written contract, including a right of first refusal, regarding the sale or delivery of not less than 1,000 acre-feet of reclaimed water by a local governmental entity intended for industrial use.

TEX. LOC. GOV'T CODE ANN. § 271.151(2). Thus,

> Section 271.151(2) effectively states five elements a contract must meet in order for it to be a contract subject to section 271.152's waiver of immunity: (1) the contract must be in writing, (2) state the essential terms of the agreement, (3) provide for goods or services, (4) to the local governmental entity, and (5) be executed on behalf of the local governmental entity.

*Williams II*, 353 S.W.3d at 135.

### 2.    There Was No Written Contract

Appellants argue that the live pleading demonstrates that "any 'agreement' between the parties or 'promises' made to [HISD] were oral or implied," that HISD "has not alleged that TexAmericas [Center] has failed to make PILOT payments to the taxing entities as delineated in the PILOT [P]rogram," and that Appellants' promises to make HISD whole at some point in the future is too indefinite to constitute a contract. HISD argues that writings memorializing an oral contract can be considered a written contract for purposes of Section 271.151 and that "it is sufficient for a plaintiff to raise a fact issue on the formation of the written contract" to survive a

10

plea to the jurisdiction. *Campbellton Rd., Ltd. v. City of San Antonio by & through San Antonio Water Sys.*, 688 S.W.3d 105, 117 (Tex. 2024).

"The elements of a valid contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Paragon Indus. Applications, Inc. v. Stan Excavating, LLC*, 432 S.W.3d 542, 547 (Tex. App.—Texarkana 2014, no pet.) (citing *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)). On the other hand, "[i]t is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000)). "Although it is difficult to say 'just what particularity or refinement of terms is essential to meet the requirement of "reasonable degree of certainty,"' . . . a contract must at least be sufficiently definite to confirm that both parties actually intended to be contractually bound." *Id.* (quoting *Pace Corp. v. Jackson*, 284 S.W.2d 340, 345 (Tex. 1955)); (citing *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846). Even if "that intent is clear, the agreement's terms must also be sufficiently definite to 'enable a court to understand the parties' obligations.'" *Id.* (quoting *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846).

HISD's claim, as set forth in its second amended petition, is based on "promises and representations" which HISD asserts are reflected in a recording of its February 25, 2019, board meeting. That said, HISD does not assert that a single written instrument constitutes the contract

11

between HISD and TexAmericas Center. Instead, HISD asserts that two resolutions attached to HISD's petition should be read together to form a contract: "the resolutions together demonstrate the essential terms of the agreement between the parties."

HISD points to its February 25, 2019, resolution of the HISD board. HISD alleges that the resolution was drafted by TexAmericas Center and that HISD was one of several local governmental entities from which TexAmericas Center sought support. The resolution does not put into writing any payment obligation from TexAmericas Center to HISD. Instead, the resolution recites that TexAmericas Center is "at a competitive disadvantage" in its efforts "to bring new economic development opportunities and jobs to Bowie County, Texas" because any entity leasing from TexAmericas Center is placed on the ad valorem tax rolls, whereas other governmental redevelopment entities across Texas and other states "are not required to place the leasehold interest upon the tax rolls so long as fee title . . . is owned by the governmental entity." The resolution expresses HISD's support for legislation that would likewise exempt TexAmericas Center lessees from ad valorem taxes. The Texas Legislature passed a bill to that effect, with an effective date of January 1, 2020. TEX. SPEC. DIST. CODE ANN. § 3503.1541 (referred to by the parties as the Special Legislation).

HISD also points to the February 25, 2020, resolution of the TexAmericas Center board. That resolution does not put into writing the relief sought by HISD. The TexAmericas Center resolution recites that "the [S]pecial Legislation as approved by the Texas Legislature was passed upon the representation by TexAmericas Center that it would institute a [PILOT] Program to protect the taxing jurisdictions, especially the [s]chool [d]istricts, which would

12

ordinarily levy and collect taxes upon the properties leased by TexAmericas Center to third parties." The resolution approves and attaches the PILOT Program document.

Although HISD relies on the PILOT Program document in support of its claim that there was an agreement between the parties, HISD rejects a material written term of the PILOT Program. HISD contends that it is sufficient that the TexAmericas Center resolution recites that TexAmericas Center "represent[ed]" that it would "protect the taxing jurisdictions." Even so, HISD takes issue with the PILOT Program provision that, for leases on or after January 1, 2019, TexAmericas Center would pay 10% of collected PILOT payments to the local taxing authorities and would keep 90% for itself to use in further development of TexAmericas Center properties. HISD's petition refers to this as TexAmericas Center "creat[ing] an additional revenue stream for itself, rather than making the taxing entities whole."

HISD also alleges in its petition that TexAmericas Center partially performed under the agreement, in support of its claim that there was an agreement between the parties. HISD's partial performance allegations are of questionable relevance to the present inquiry: "Typically, parties enter into a written contract through signing a document, and subsequent performance . . . would not be relevant to whether a contract is subject to [Section 271.152]." *Campbellton Rd., Ltd.*, 688 S.W.3d at 116 (footnote omitted) (citations omitted).[7] Even assuming partial performance was relevant to the analysis, HISD did not sign the PILOT Program, which it relies on as one of the instruments forming the contract. Instead, HISD alleges an email received from

---

[7]The facts alleged by HISD do not bear on entry to a contract and therefore fit the typical case. *See Campbellton Rd., Ltd.*, 688 S.W.3d at 116. Subsequent performance may be relevant to contract formation when, for example, an employee demonstrates "acceptance by performance" after "an employer promises an employee certain benefits in exchange for the employee's performance." *Id.* (quoting *Williams II*, 353 S.W.3d at 136, 138). Such facts are not alleged by HISD.

13

and payments by TexAmericas Center as partial performance. HISD alleges that the email and payments "confirm[]" and "reiterate[]" the "prior agreement of the parties." But, by "prior agreement of the parties," HISD does not mean the written PILOT Program but instead means what was "promised" when TexAmericas Center sought HISD's support, which in HISD's view was "to make the District whole." HISD alleges that it was "promised" to receive "the entire PILOT payments collected from the tenants." Again, though, the written PILOT Program, on which HISD relies, provides otherwise.

Simply put, HISD contradicts a writing that HISD relies on to satisfy the "written contract" waiver of immunity. Thus, HISD's petition and its attachments, even when read liberally, do not allege a written contract by which HISD could overcome TexAmerica Center's immunity. By contradicting the written PILOT Program document on the handling of payments after January 1, 2019, HISD's allegations negate the written expression of a meeting of the minds on that subject.

> "The failure of the parties to reach some understanding as to price often indicates that there has been no meeting of the minds," and "a contract which does not fix the price or consideration or provide an adequate way in which it can be fixed is too incomplete to be specifically enforceable."

*Fischer*, 479 S.W.3d at 240 (quoting *Bendalin v. Delgado*, 406 S.W.2d 897, 899 (Tex. 1966)); *Campbellton Rd., Ltd.*, 688 S.W.3d at 120 n.77.

We therefore hold that HISD has failed to affirmatively show a waiver of immunity by alleging a written contract that satisfies the "written contract" waiver of immunity. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151(2)(A), 271.152; *Dohlen*, 643 S.W.3d at 393.

14

**C. There Is No Waiver of Immunity for HISD's Tort Claims**

As for HISD's tort claims, "[i]t is well-settled in Texas that certain equitable claims do not fall within a waiver of governmental immunity." *Nortex Reg'l Plan. Comm'n v. City of Bellevue*, No. 02-24-00498-CV, 2025 WL 1840472, at *6 (Tex. App.—Fort Worth July 3, 2025, no pet.) (mem. op.) (citing *Richardson Hosp. Auth. v. Duru*, 387 S.W.3d 109, 114 (Tex. App.—Dallas 2012, no pet.); *Gay v. City of Wichita Falls*, 457 S.W.3d 499, 507 (Tex. App.—El Paso 2014, no pet.)); *see In re S.A.P.*, 156 S.W.3d 574, 577 (Tex. 2005) (per curiam) ("[E]quitable estoppel generally does not apply to governmental entities.").

"Promissory estoppel is one such equitable claim that is barred by governmental immunity." *Nortex Reg'l Plan. Comm'n*, 2025 WL 1840472, at *6 (citing *McDaniel v. Crowley Indep. Sch. Dist.*, No. 02-24-00053-CV, 2025 WL 876777, at *5 (Tex. App.—Fort Worth Mar. 20, 2025, pet. denied)). Because a "promissory-estoppel claim does not satisfy the writing requirement of Section 271.152, governmental immunity also bars [a] promissory-estoppel claim." *Id.* (citing TEX. LOC. GOV'T CODE ANN. § 271.152).

Also, Texas courts have consistently found that "[f]raud is not included within the limited scope of the waiver of immunity for tortious conduct under Section 101.021 of the Civil Practice and Remedies Code." *Cnty. of El Paso v. Mijares*, 630 S.W.3d 169, 174–75 (Tex. App.—El Paso 2020, pet. denied). "Texas courts have acknowledged the lack of consent by the State to be sued for fraud." *Id.* (citing *Ethio Express Shuttle Serv., Inc. v. City of Houston*, 164 S.W.3d 751, 758 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *City of Fort Worth v. Pastusek Indus., Inc.*, 48 S.W.3d 366, 372 (Tex. App.—Fort Worth 2001, no pet.)).

15

We find that HISD has not asserted any waiver of governmental immunity for its promissory estoppel or fraud claims.

### D. HISD Fails to Assert a Proper Ultra Vires Claim

The last basis for waiver of governmental immunity asserted by HISD is its assertion of ultra vires claims against Norton and Whitten. However, this is not a basis for waiver of governmental immunity against TexAmericas Center or its nonprofit corporations. This is because "[a]n *ultra vires* claim may name a government official in his official capacity, but the underlying governmental entity remains immune from suit." *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 348 (Tex. 2019). As a result, in this section, we examine only HISD's jurisdiction over its claims ultra vires against Norton and Whitten. *See id.*; *AIM Media Tex., LLC v. City of Odessa*, 663 S.W.3d 324, 335 (Tex. App.—Eastland 2023, pet. denied).

Certainly, "an *ultra vires* claim is available if [a governmental] officer 'acted without legal authority or failed to perform a purely ministerial act.'" *Chambers-Liberty Cntys. Navigation Dist.*, 575 S.W.3d at 349 (quoting *Heinrich*, 284 S.W.3d at 372). This is because "*ultra vires* suits do not attempt to exert control over the state—they attempt to reassert the control of the state." *Heinrich*, 284 S.W.3d at 372. "Stated another way, these suits do not seek to alter government policy but rather to enforce existing policy." *Id.*

"But, to fall within this 'ultra vires exception,' a suit must allege that a state official acted without legal authority or failed to perform a purely ministerial act, rather than attack the officer's exercise of discretion." *Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 76

16

(Tex. 2015) (quoting *Heinrich*, 284 S.W.3d at 372). "'Ministerial acts' are those 'where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.'" *City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018) (quoting *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015) (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994))). "Conversely, 'discretionary acts' are those that 'require the exercise of judgment and personal deliberation.'" *Id.* (quoting *Emmett*, 459 S.W.3d at 587).[8] Thus, "[a]n *ultra vires* claim based on actions taken 'without legal authority' has two fundamental components: (1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *Hall v. McRaven*, 508 S.W.3d 232, 239 (Tex. 2017) (quoting *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016)).

"Whether a claimant has alleged a valid ultra vires claim is a question of law that we review de novo." *Hartzell v. S.O.*, 672 S.W.3d 304, 311 (Tex. 2023). HISD's live pleading alleged that Norton and Whitten's actions were either authorized by TexAmericas Center or were not. This is far from alleging that Norton and Whitten's actions were unauthorized.

Also, HISD stated in its petition that "[a]t all times relevant to Plaintiff's claims asserted in this petition," Norton was "the Executive Director and Chief Executive Officer of [TexAmericas Center]" and Whitten was "the Executive Vice President and Chief Operations

---

[8]Although HISD seeks monetary relief, "retrospective monetary claims are generally barred" in ultra vires claims because its purpose is to seek compliance of the law from a governmental actor. *See Houston Mun. Emps. Pension Sys.*, 549 S.W.3d at 576 (citing *Heinrich*, 284 S.W.3d at 374). "If the relief is injunctive, then whether it is retrospective or prospective is measured from the date of injunction." *Id.* (citing *Heinrich*, 284 S.W.3d at 376). "If the injury has already occurred and the only plausible remedy is monetary damages, an *ultra vires* claim will not lie." *Id.* (citing *Heinrich*, 284 S.W.3d at 374).

17

Officer." HISD attached TexAmericas Center's PILOT Program to its pleadings, which showed that the resolution was adopted by TexAmericas Center to promote "economic development upon its property in Bowie County," which is one of the purposes of TexAmericas Center listed by the Texas Legislature. *See* TEX. SPEC. DIST. CODE ANN. § 3503.003(a)(6), (c). As members of the board of directors, Whitten and Norton were granted the power to "manage, control, and operate [TexAmericas Center]." *See* TEX. SPEC. DIST. CODE § 3503.051.[9] Thus, even a liberal reading of the petition shows that HISD does not allege that Whitten and Norton acted without legal authority or failed to perform a ministerial act. As a result, Appellants argue that HISD "failed to allege facts regarding what authority Mr. Norton and Mr. Whitten exceeded, or what ministerial acts are at issue." We agree.

We find that HISD failed to properly allege any ultra vires claims against Norton and Whitten.

### E.      There is No Basis for Waiver of Governmental Immunity

There is a "heavy presumption in favor of immunity," which the plaintiff must overcome. *Nueces Cnty. v. San Patricio Cnty.*, 246 S.W.3d 651, 653 (Tex. 2008) (per curiam) (quoting *City of Galveston*, 217 S.W.3d 466, 469 (Tex. 2007)). As a result of our findings, we conclude that HISD's live pleading failed to affirmatively demonstrate the Texas Legislature's waiver of governmental immunity for its claims.

---

[9]HISD also seeks injunctive relief, but an injunction is a remedy, and HISD first must establish that the Texas Legislature has waived immunity from suit.

If the pleading could be amended to add a proper ultra vires claim, we would have the option of remanding to allow HISD to amend its pleadings.[10] However, HISD has already had opportunities to replead, without success. We also find that the live pleading and its attachments negate the existence of jurisdiction. As a result, we find that Appellants' plea to the jurisdiction should have been granted.

## VI. Conclusion

We reverse the trial court's order overruling the plea to the jurisdiction and render judgment dismissing HISD's claims.


Scott E. Stevens
Chief Justice

Date Submitted: December 17, 2025
Date Decided: February 25, 2026

---

[10]"If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court[']s jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Miranda*, 133 S.W.3d at 226–27. "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* at 227; *see Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).